UNITED STATES *v.* BADISCHE & Co. (No. 1011).[1]

1. "INDIVIDUALS" IN PARAGRAPH 517, TARIFF ACT OF 1909.

It is reasonably clear that the term "individuals," as employed in paragraph 517, tariff act of 1909, was intended to differentiate between the publications of those other than literary associations or academies and foreign governments and to include under "individuals" all others.

2. PUBLICATIONS FOR GRATUITOUS PRIVATE CIRCULATION.

The publishers of the books imported were dealers in dyes and chemicals; were sellers of the dyestuffs listed in the publication. The testimony showed that these books were intended to be, and were, circulated gratuitously. They were entitled to free entry under paragraph 517, tariff act of 1909.—Schieffelin *v.* United States (84 Fed., 880).

United States Court of Customs Appéals, February 1, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29309 (T. D. 32714).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

*Walden & Webster* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in question in this case consists of books published by the Badische Anilin & Soda-Fabrik, a corporation engaged in the manufacture and sale of colors and dyestuffs. They were assessed for duty under the general provisions for books in paragraph 416 of the tariff act of 1909. The importers protested and claimed that the books were entitled to free entry as "publications of individuals for gratuitous private circulation" under paragraph 517 of said act.

---

[1] Reported in T. D. 33170 (24 Treas. Dec., 188).

Paragraph 517 in full reads as follows:

Books, maps, music, engravings, photographs, etchings, bound or unbound, and charts, which shall have been printed more than twenty years at the date of importa-tion, and all hydrographic charts, and publications issued for their subscribers or exchanges by scientific and literary associations or academies, or publications of individuals for gratuitous private circulation, and public documents issued by foreign governments.

The board sustained the protest and held the publication entitled to free entry. The Government subsequently made an application for a rehearing, which was denied, and this appeal was taken to review the two decisions of the board.

Testimony of the importers, which is uncontradicted, was offered by a member of the importing firm, who testified that the English translation of the title of the books would be "Pocket Guide of Scientific Books," which "we give away to dyers, for dyers or users of dyes, to schools that make a specialty of preparing dyes, such as the Lowell Textile School, to colleges, and so on." It also appeared that the publishers of the books were dealers in dyes and chemicals and were sellers of the dyestuffs listed in the book.

The board was of the opinion that these books were of the class intended for gratuitous private circulation within the meaning of paragraph 517, and relied for this ruling upon the case of Schieffelin *v.* United States (84 Fed., 880).

In view of the history of that case we do not see how the conclusion reached by the Board of General Appraisers can be well avoided. Paragraph 410 of the act of August 27, 1894, provided for the admission free of duty of "publications issued for their subscribers by scientific and literary associations or academies, or publications of individuals for gratuitous private circulation and public documents issued by foreign Governments." This provision came before the Circuit Court of Appeals in the case cited, and it appeared that the publication, claimed to be the publication of individuals for private circulation, was a book treating of various subjects relating to Norway, its fishermen and fisheries, its customs, to Moller's Cod-Liver Oil, and containing some matter of scientific research original with the author. It was published, not for general circulation or for sale, but for gratuitous distribution to such selected persons, principally physicians and others who might become interested in Moller's Cod-Liver Oil, as should be designated by the publisher or his friends. This was held to be free of duty under the paragraph quoted. It was stated:

The publisher doubtless expected by its distribution to promote the sale of his cod-liver oil by enlightening those who might read it in regard to the valuable properties of that article.

This circumstance, however, is not material. The books were imported for gratuitous private circulation, and, if this was done in the effort to accomplish some ulterior object of interest to the publisher, the statute does not condemn it or make it in any sense a test of the dutiable character of the books.

The present publication is in all essentials similar to that there under consideration, and with this decision before it, and attention having been drawn to it in the Notes on Tariff Revision (pp. 670, 671), Congress reenacted this portion of the paragraph in the terms employed in the act of 1894. This is a legislative recognition of the judicial interpretation previously given to the enactment.

But it is urged in this case as a reason why the books are not entitled to free entry that the publication is limited to publications of an individual, and it is pointed out that the word "individual" is sometimes construed to mean a single person, as a man or woman. Yet numerous decisions have been given, and are referred to in the brief of the Government, in which the word "individual" used in the statute has been held to include corporations and partnerships, as, for instance, a Massachusetts statute which provided that no abatement should be made of the taxes assessed on any individual until he should have filed a list under oath, was held to have included under the term individual both natural persons and corporations. Otis v. Inhabitants of Ware (74 Mass., 509).

So, in construing a statute of Mississippi, which levied an ad valorem tax of one-fourth of 1 per cent on all money loaned on interest by individuals, it was held that the term included natural persons and foreign banks or corporations as distinguished from banks incorporated under the laws of Mississippi.

This is a case which we think strongly in point here, as it would seem that the word "individuals" here employed was used to distinguish between the classes entitled to introduce their publications free. This brief paragraph provides for three classes of publications— publications issued for their subscribers or exchanges by scientific and literary associations or academies, public documents issued by foreign governments, and publications of individuals intended for gratuitous private circulation. It seems reasonably clear that the word "individuals" as here employed was intended to differentiate between publications of those other than literary associations or academies and of foreign governments and to include under the term individuals all others. Other cases might be cited.

The subject is summed up in 22 Cyc., 494, under the term "individual," where, after citing that as a noun it means one distinct being, a single one, and when spoken of the human kind it means one man or one woman, the paragraph concludes: "As used in statutes relative to taxation the term applies equally to corporations and individuals."

We think this contention of the Government should be overruled. The decision of the board is *affirmed*.