UNITED STATES *v.* GIPS (No. 1168).[1]

BOOKS GRATUITOUSLY AND PRIVATELY CIRCULATED.

These books appear to have been printed by the Brusse Publishing House, of Rotterdam, for the Holland-American Line. This shipping company circulates the books gratuitously to excite interest in foreign travel and so secure patronage for its steamers. The mere size of the circulation of these books, an edition of 40,000 being printed, does not negative the importer's contention that they were gratuitously privately circulated.—United States *v.* Badische Co. (3 Ct. Cust. Appls., 528; T. D. 33170).

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31839 (T. D. 33304).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

*Brooks & Brooks* (*F. W. Brooks, jr.,* of counsel) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The importation now in question consists of 1,000 copies of a book entitled "With Roosevelt through Holland," written in the English language by M. J. Brusse and illustrated with pen and ink sketches by J. G. Veldheer.

The appraiser reported that the importation consisted of "illustrated books containing advertising matter printed by a corporation," and returned an advisory classification as books not specially provided for, dutiable at 25 per cent ad valorem under paragraph 416 of the act of 1909. Duty was assessed by the collector in accordance with this return.

The importers duly filed their protest against the assessment, claiming the books to be publications of an individual for gratuitous private circulation, and free of duty under that description by force of paragraph 501 of the act.

The protest was submitted upon evidence to the Board of General Appraisers and was sustained, from which decision the Government now prosecutes this appeal.

The following is a copy of the pertinent parts of the paragraphs severally relied upon by the parties:

416. Books of all kinds, bound or unbound, including blank books, slate books and pamphlets, engravings, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing wholly or in chief value of paper and not specially provided for in this section, twenty-five per centum ad valorem. * * *

FREE LIST:

517. * * * And publications issued for their subscribers or exchanges by scientific and literary associations or academies, or publications of individuals for gratuitous private circulation, * * *.

---

[1] Reported in T. D. 33879 (25 Treas. Dec., 451).

The books in question are bound in paper and contain 62 pages. Upon the front of each copy is the imprint "Published by the Holland-American Line." Upon the inner title page appears the statement "Published by the Holland-America Line, W. L. & J. Brusse, publishers, Rotterdam." It appears that the author of the work is a Dutch journalist who accompanied ex-President Roosevelt upon a tour through Holland, and the book contains a description of the trip, with illustrations. Upon the last page of the volume appears a schedule of the steamship service of the Holland-America Line, with the location of its principal agencies, illustrated with a cut of one of its steamships. The firm of W. L. & J. Brusse, printers and publishers, of Rotterdam, printed 40,000 copies of the book, all of which were purchased by the Holland-America Line. The Brusse firm did not issue any of the books to any person other than the company, and no copy of the work has ever been put upon the market for sale. The importer is the agent in this country of the Holland-America Line, and the present importation is made for the sole purpose of gratuitous distribution among the patrons of the company and among other persons selected by the company who are likely to become interested in foreign travel. For this purpose the company preserves lists containing the names of its patrons and of other persons recommended by them, and in addition thereto it purchases lists of names from agencies which prepare such lists for various purposes. This work is sent gratuitously to the recipients, none being sold, and the purpose of the company is to excite interest in foreign travel and thereby to secure patronage for its line of steamships. It is said that half of the 40,000 copies have already been distributed by the company in this manner and for this purpose. A very few copies, however, have been sent to school teachers for educational purposes, this also gratuitously.

Upon the foregoing facts the Government presents two contentions: First, that the books in question were actually published by the Brusse firm, and not by the steamship company; and, second, that the distribution of the books by the steamship company to the extent and in the manner above stated is actually a public and not a private circulation of them under the statute. Upon these grounds the Government claims a reversal of the board's decision.

It seems to the court, however, that it can not be said that the Brusse firm really published the books in question. It is conceded that they printed the books. But, on the other hand, they never issued or distributed any of the volumes or brought any of them to the hands of the public or the book trade. In the transaction under review the publication of the volumes is properly to be found in the distribution of them by the steamship company rather than in the printing of them by the Brusse company. The books bear the con-

fusing imprint that they are published by both companies, and the only witness examined in the case stated that the books were published by the Brusse firm, who thereupon sold the entire edition to the steamship company. However, it seems improbable that an edition of 40,000 copies of this English book should be published in Holland by a Dutch publishing house for ordinary book-trade purposes only; and this fact, taken together with the imprint already noted, and also the handling of the entire edition by the steamship company, reasonably leads to the belief that the Brusse firm simply printed the book by arrangement with the steamship company and were not the real publishers of the work at all. In this view of the facts the first contention of the Government as above noted is not sustained.

Coming to the second contention of the Government, it may first be noted that the expression of the tariff provision, " publications * * * for private circulation " itself seems somewhat anomalous, since publication primarily means to issue something to the public instead of keeping it private. However, the context of the clause in question aids in its construction, and, moreover, the subject has been considered by the courts in several reported cases.

In the case of Schieffelin *et al. v.* United States (84 Fed., 880, Circuit Court of Appeals, Second Circuit) a similar issue was made under a like paragraph of the tariff act of 1894 concerning an importation of 900 copies of a work relating to Norway, its fishermen and fisheries, its customs, and also relating to Moller's cod-liver oil, containing likewise some matter of scientific research original with the author. The book in question was published not for general circulation nor for sale, but for gratuitous distribution to selected persons, principally physicians and others who might become interested in Moller's cod-liver oil, such as should be designated by the publisher or his friends. The publisher doubtless expected by its distribution to promote the sale of his cod-liver oil by enlightening those who might read it in regard to the valuable properties of that article. This distribution of the work in question was held by the court to be a publication for gratuitous private circulation within the paragraph in question and therefore entitled to entry free of duty. The court said that the fact that the book was circulated in the effort to accomplish some ulterior object of interest to the publisher, in this case the sale of a merchantable article, did not take it out of the provision for free entry contained in the act.

The number of copies composing the single importation involved in the foregoing case does not appear in the court's decision therein, but in " Notes on Tariff Revision " (670) the number is stated to be 900 copies. The attention of the Ways and Means Committee was called in that work both to the number of copies imported and to the

decision of the court in the case, but no change of phraseology appeared in the corresponding enactment of 1909.

In the case of United States *v.* Badische Co. (3 Ct. Cust. Appls., 528; T. D. 33170) this court followed the principles announced in the foregoing decision. The Badische Co. was a corporation engaged in the manufacture and sale of colors and dyestuffs. Under the act of 1909 the company made an importation of 1,150 copies of a work entitled "Pocket Guide of Scientific Books," which related to dyestuffs and the processes of applying them, together with occasional references by name to the wares marketed by the company. The books were intended for gratuitous distribution to users of dyes and to technical schools, with the evident purpose of promoting the use of the company's products. The court held that the consignment was entitled to free entry under the paragraph now in question. It may here be noted that the number of copies constituting the protested consignment in the foregoing case does not appear in the court's decision therein, but is found in the testimony contained in the record of the case.

It therefore appears that the importation involved in the Schieffelin case consisted of 900 volumes, that in the Badische case 1,150 volumes, and that in the present case 1,000 volumes. In the present case it appears that the importation is only a small part of the total number of similar volumes composing the entire edition, and it may safely be assumed that the same condition obtained in respect to the former cases. In each case, however, the books were intended for gratuitous circulation among a selected class of persons only and not designed to be sold or spread abroad among the general public. In each case the publishers retained exclusive control of the circulation of the publication and limited the circulation to a selected class of persons acceptable to themselves, as distinguished from the general public. In the one case the selected class consisted " principally of physicians and others who might become interested in Moller's cod-liver oil." In the other case the selected class consisted of " dyers or users of dyes, to schools that make a specialty of preparing dyes, such as the Lowell Textile School, to colleges, and so on." In the present case the selected class consists of " persons interested in Holland " or " in taking a trip to Holland," and the names of these persons are secured by getting the names of those who have traveled by the company's line, together with other names suggested by the travelers and also the names appearing upon a classified list purchased from a dispatch company.

There is no reason to believe that there is any significant disparity between the number of persons in this country who may be interested in Norway, with its fisheries, and Moller's cod-liver oil, or in dyes and dyestuffs upon the one hand, and the number of persons in this coun-

try who may be interested in travel in Holland upon the other hand. In each case the class is limited in interest and small in numbers when compared with the general public, and the distribution of a printed work within such a class gives the work a private rather than a public circulation.

The context of the tariff provision now in question is instructive upon the present issue. The entire clause of the free list now in question is, " and publications issued for their subscribers or exchanges by scientific and literary associations or academies or publications of individuals for gratuitous private circulation." There is nothing in this clause which limits the number of volumes entitled to free entry, except that they shall all come within the statutory description. And in that behalf it may be said that in many cases the publications issued for their subscribers or exchanges by scientific and literary associations may comprise many volumes and reach a large class of persons and contain matter of great general interest.

The court therefore accepts the view that the present importation is entitled to free entry as decided by the board, and the board's decision to that effect is *affirmed*.