The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* SILK ASSOCIATION OF AMERICA (No. 3134)[1]

United States Court of Customs Appeals, February 27, 1929

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.
*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument December 6, 1928, by Mr. Igstaedter and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and BARBER (retired), Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain catalogues, or unbound publications, in a highly-ornamented cover, entitled "A Study of Conditions in Millinery," and

---

[1] T. D. 43296.

containing colored illustrations of millinery models or styles, including hats, wrist bags, parasols, and pocketbooks, accompanied by descriptive reading matter, were imported by the Silk Association of America, appellee, at the port of New York, and were assessed for duty under paragraph 1306 of the Tariff Act of 1922, which reads in part as follows:

1306. * * * fashion magazines or periodicals, printed in whole or in part by lithographic process, or decorated by hand, 8 cents per pound; * * *.

The protest by importer claimed that the importation should have been admitted free of duty either under paragraph 1528 or 1530 of the same act, which paragraphs, in part, follow:

1528. * * * and publications issued for their subscribers or exchanges by scientific or literary associations or academies, and publications of individuals for gratuitous private circulation, not advertising matter, * * *.

1530. Any society or institution incorporated or established solely for religious, philosophical, educational, scientific, or literary purposes, or for the encouragement of the fine arts * * * may import free of duty any book, * * * lithographic print, or chart, for its own use or for the encouragement of the fine arts, and not for sale, * * *.

Appellee's claim under paragraph 1530 was not pressed here and its inapplicability to the merchandise in controversy is at once apparent.

The answer to the protest by the appraiser follows:

The merchandise in question consists of fashion magazines or periodicals, printed in whole or in part by lithographic process or decorated by hand. It was returned for duty as such at 8¢ per pound under par. 1306, act of 1922.

The publications measure approximately 11 inches in length and 8¾ inches in width. On the front of each cover are the French words "Dans la haute Mode à Paris les Chapeaux de Velours, Saison 1926," which, translated into English, read: "In the height of fashion at Paris, the hats of velour, season 1926." In the center of the cover is a design of a lady in the costume which illustrates the merchandise described. At the bottom of the design are the words "Creation Reboux." Within the cover are 17 pages containing various illustrations and designs, in colors, of hats and different articles of wearing apparel of velvet or silk. For each picture design there is a paragraph of descriptive matter. According to the United States examiner, the reading matter and the illustrations, which are contained within the cover, are printed in whole or in part by a lithographic process or decorated by hand, or both. There is nothing in the record that satisfactorily contradicts this statement by the examiner.

The United States Customs Court sustained the protest and held the merchandise free of duty under paragraph 1528 for "publications of individuals for gratuitous private circulation, not advertising matter."

The Government has appealed from the judgment of the court below and here urges that the holding of the court below is erroneous for the reason that the publications, being advertising matter, are excluded from paragraph 1528, and that the classification of the merchandise, by the collector, under paragraph 1306, as "fashion magazines or periodicals" was proper.

The testimony and protest show that the Silk Association of America is incorporated for the purpose of being a clearing house for information for the benefit of the silk industry. Its objects are set out in Exhibit 2, which is the Certificate of Incorporation and By-Laws of the association. We quote:

The objects of the association shall be for the purpose of promoting the advancement and prosperity of the silk interests in the United States more effectually by the increase of information, by the interchange of ideas, by harmonious action, by the development of industrial art, and by all other proper and appropriate means.

The books were prepared for the association in France, under the authorization and supervision of Paul Charbin, who represented the association. They were a special order and are chiefly concerned with millinery. They were imported to be sent, in part, to the manufacturing trade in this country to whom the silk association was selling silk and for the purpose of stimulating interest in the styles of silk merchandise, thereby increasing the sales of silk. The Silk Association of America is composed of several hundred manufacturers of silk and those interested in silk production and manufacture. The publications do not come out at regular intervals, the importation at bar being the only issue ever published. Appellee's witness described the merchandise as a catalogue or a summary of fashions. The publications were sent, free of charge, to a list of 860 selected department stores, millinery manufacturers, millinery designers, millinery jobbers, retail millinery specialty shops, a few women's publications, and special style writers. The chief witness for appellee stated that the books were sent to them "to stimulate manufacturers' interest in producing stylish millinery merchandise * * * made out of silk, silken materials." It is claimed that of the 1,734 copies imported, only 860 were distributed.

In *Van Doorn* v. *United States*, 12 Ct. Cust. Appls. 167, T. D. 40063, a book styled "Holland America," giving an historical account of shipping and other relations between Holland and North America, published and circulated gratuitously to excite interest here in foreign travel, particularly to Holland, and to enhance good will of the Holland America Steamship Line, whose display advertisements constituted at least half the volume, was, by this court, held to be advertising matter within the prohibition of paragraph 425 of the Tariff Act of 1913, which, as respects the issue here, was identical with paragraph 1528 of the Tariff Act of 1922.

In the above-cited case, a number of authorities were discussed and we do not deem it necessary to prolong discussion here. We think, under the ruling in the *Van Doorn* case, *supra*, the publication at bar is advertising matter, and classification under paragraph 1528 is expressly forbidden.

In determining the applicability of paragraph 1306, *supra*, we must first decide whether the publications at bar are or are not fashion magazines or periodicals.

*Magazine* is defined in Webster's New International Dictionary as follows:

Magazine. * * * 4b. A pamphlet published periodically containing miscellaneous papers, esp. critical and descriptive articles, stories, poems, etc., designed for the entertainment of the general reader.

What we commonly understand as fashion magazines contain fashion plates and pictures, but we know of nothing that is styled a magazine which is published only once and intended to be published but once.

*Periodical* is defined in the same authority as follows:

Periodical. A magazine or other publication which appears at stated or regular intervals; not applied to books published in parts, and but rarely to newspapers.

It is at once apparent that the publications at bar are not periodicals since they were published only once

Government's counsel urges, however, that "paragraph 1306 more nearly describes the merchandise at bar than does the provision in paragraph 1528," and asserts the publications should be classified under paragraph 1306, even though they are not issued periodically.

Congress was familiar with the terms "books," "pamphlets," "printed matter," and "publications." It could have included within the provisions of paragraph 1306 merchandise such as is at bar by the addition of the word "publications," or other appropriate term. The use of the words "fashion magazines or periodicals" and the omission of any other term, we think, is significant. In view of the number of terms used in referring to printed matter in the act under consideration and prior acts, we can not conclude that the words "fashion magazines or periodicals" were used in a broader sense than their common ordinary meaning would import.

One who protests the collector's classification of merchandise must not only show that the collector is wrong, but must point out in the protest the correct paragraph under which he claims his goods to be dutiable. *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, T. D. 38374; *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239. The importer in the case at bar claimed under the free paragraphs 1528 and 1530 only, both of which claims must be rejected.

For the reasons heretofore set out, the judgment of the United States Customs Court must be *reversed*, without approval by this

court of the classification of the collector, which, under the circumstances, must stand.

Since the issues in this case have not permitted full presentation or consideration of the applicability of other paragraphs of the Tariff Act, we do not feel justified in pointing out the proper dutiable status of the importation at bar.