United States *v.* American Railway Express Co. et al. (No. 3132)
F. W. Myers & Co. et al. *v.* United States (No. 3135)[1]

United States Court of Customs and Patent Appeals, April 2, 1929

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument January 30, 1929, by Mr. Lawrence]

Before Graham, Presiding Judge, and Bland and Hatfield, Associate Judges

Graham, Presiding Judge, delivered the opinion of the court:

These cross appeals are with reference to the classification of certain printed matter entered at various times by F. W. Myers &

[1] T. D. 43317.

Co. and the American Railway Express Co. at the ports of Detroit and Ogdensburg. A large number of protests are involved, but it has been stipulated that three of them are typical of all protests involved, protests 193251–G and 186857–G being typical of one group. and protest 169508–G being typical of another group. In the first group the merchandise was claimed to be free of duty under paragraph 1528, or alternatively dutiable at 15 per centum ad valorem, under the first part of paragraph 1310 of the Tariff Act of 1922. The merchandise was classified by the collector as printed matter, not specially provided for, at 25 per centum ad valorem under said paragraph 1310. In the second group the merchandise was claimed to be dutiable at 15 per centum ad valorem under said paragraph 1310, or, alternatively, at 5 cents per pound and 20 per centum ad valorem under paragraph 1305 of said act. In this case, also, the merchandise was classified as printed matter, not specially provided for, under said paragraph 1310, at 25 per centum ad valorem.

After a hearing before the United States Customs Court, the various protests were sustained under said paragraph 1310, as printed matter of bona fide foreign authorship. From that judgment the Government has appealed, claiming the goods to be dutiable as classified by the collector. Cross errors have been assigned by the importers, claiming the merchandise to be free of duty as publications of individuals for gratuitous private circulation not advertising matter, under said paragraph 1528.

The statutes involved are as follows:

1310. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem; * * *.

1528. * * * publications of individuals for gratuitous private circulation, not advertising matter. * * *

A large number of samples of the imported merchandise have accompanied this record and are now before the court. It appears from an examination of these samples, as well as from the testimony, that these various publications are issued by the Canadian National Railways and that they are kept for gratuitous distribution at various places; that whenever a request is received for information as to any particular matter, these publications are sent to the person making inquiries, according to the nature of the inquiry. They cover a large range of subjects, principally, however, devoted to a description of localities accessible through the use of the Canadian National Railways, and including also a considerable number of

pamphlets giving details as to fishing, hunting, camping, wood lore, hotels, resorts, and like subjects. Some of them are profusely illustrated, have maps attached, and contain several hundred pages of reading matter, while others are smaller and contain only lists of resorts, time tables, and similar information.

It is first insisted by the importers that these books and pamphlets, all of which are paper bound, are free of duty as publications of individuals for gratuitous private circulation, not advertising matter.

The Government takes issue on this contention, insisting that the material contained in such publications is advertising matter. We have examined all the samples with some care, and are convinced the contention of the Government, in this respect, is correct. The various publications, without exception, are intended to call attention to the advantages to be received from the use of the Canadian National Railways. Naturally a reading of them will induce travel and thus bring revenue to the distributor of the same.

A ruling case, in our opinion, is *Van Doorn* v. *United States*, 12 Ct. Cust. Appls. 167, T. D. 40063. In the case cited, the contest was between paragraph 329 of the Tariff Act of October 3, 1913, covering books of all kinds, bound or unbound, and paragraph 425 of the free list of the same act covering publications of individuals for gratuitous private circulation, not advertising matter. There the imported article was a book giving an historic account of shipping and other relations between Holland and North America, which was profusely and elaborately illustrated with pictorial matter, depicting the scenes of early expeditions and explorations treated therein. It was there conceded, as it is in the case at bar, that the motive which prompted the distribution was to excite interest in travel, and to enhance the good will of the distributor. The court there held that this was sufficient to classify the book as advertising matter, and it was so held to be dutiable. See also *United States* v. *Silk Association of America*, T. D. 43296, 16 Ct. Cust. Appls. 566.

No difference, in our judgment, can be found between that case and the one at bar. It is only reasonable to assume that the Canadian National Railways would not be distributing these pamphlets if it were not to increase interest in travel on their lines, or, as said in the *Van Doorn* case, *supra*, "To enhance the good will of the distributor."

The next question has to do with the claim made by the importers that these books and pamphlets should be classified at 15 per centum ad valorem under said paragraph 1310 as printed matter of bona fide foreign authorship. It is claimed by the Government that even if it were conceded that these goods might be classified under this provision, there is an entire failure of proof as to a portion of them that they are of bona fide foreign authorship. Attention is called to

the fact that after the close of protestants' case the Government offered certain samples known as Exhibit 1 to Exhibit 30, inclusive, which were received in evidence, and as to which it is claimed there is an entire absence of proof as to the character of their authorship, if any authorship thereof is found. We have examined the record with care as to this claim. The protestants, in making their proof, offered in evidence certain illustrative exhibits known as Fourth Annual Mediterranean Cruise, Canadian Pacific, Camp Craft and Woodlore, Canada, Atlantic to Pacific, Canada, Pacific to Atlantic, Hotels and Boarding Houses, The Quebec Bridge, and The Capital City of Ottawa. These were admitted in evidence, and, in our opinion, were properly shown to be of bona fide foreign authorship.

In addition to this, witnesses were produced who were interrogated both in chief and on cross-examination as to various other publications which appear to have then been before the court, and the record shows that proof of bona fide foreign authorship was properly made as to the following: Exhibit 3, Pacific to Atlantic Through the Canadian Rockies; Exhibit 4, To the Pacific Coast Through the Canadian Rockies; Exhibit 5, The Triangle Tour; Exhibit 8, Alaska; Exhibit 21, Nova Scotia; Exhibit 27, Canoe Trip and Nature Photography; Exhibit 28, Hunting in Canada; Exhibit 29, Prince Edward Island; Exhibit 30, New Brunswick.

This disposes of all of said exhibits except 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, and 26.

It is true there is no proof directed specifically to these latter exhibits. However, it seems to be manifest, from this record, that all of these exhibits were before the trial court on the hearing. This is very evident from the opinion of the court below. The trial court calls attention to the fact that the witness, Arthur B. Smith, on being interrogated, made the following answer:

Q. Were all these pamphlets, besides any that were covered by a special author mentioned, published, and produced by citizens of Canada?—A. Yes, sir.

This answer, of course, had reference to the publications which had been imported, and which had not been theretofore specifically indicated as having been written by some author named.

The record is full of references, which indicate that all these samples, both those introduced by the Government and by the importers, were before the court. For instance, Mr. Higginbotham, representing the Government, in cross-examination of the witness, Arthur B. Smith, after having inquired about several of these exhibits which had not been offered in evidence by the protestants, and which constitute a part of the Government's exhibits, then made this inquiry:

Q. Did you get up all the illustrations in all these others?—A. Yes, sir.

Obviously he was referring not only to the protestants' exhibits, but to the Government's exhibits as well, then in the court room before the cross-examiner and the witness.

Many other like inquiries were made which it will not be necessary to more specifically refer to here. After these various inquiries, the Government counsel stated: "I offer all the Government samples in evidence," and they were thereupon received. It is sufficient to say that we are of opinion the proof of bona fide foreign authorship has not failed, and that the pamphlets and printed matter before us may be considered as of bona fide foreign authorship for the purposes of this appeal.

But one question remains: Are the publications of such a character as to be susceptible of authorship? If they are, they ought to be classified as claimed by protestants under said paragraph 1310; if not, plainly the protestants have not made out a case

In *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031, we were considering the provisions in said paragraph 1310 relative to foreign authorship. The imported articles, in that case, were parts of linen handkerchiefs bound together in portfolios, with printed labels on said parts. These were claimed to be books. The court did not so hold, and, in discussing the matter, Barber, J., speaking for the court, said, among other things:

Webster defines "author" as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler," and defines "authorship" as "the quality or state of being an author." There are other meanings given to these words, but we think the foregoing is the sense in which the word "authorship" is used in paragraph 1310. A mere mechanical production, such as the importations here, is not, we think, susceptible of authorship as that word is used in the paragraph.

\* \* \* \* \* \*

We are of opinion that Congress intended that the ellipsis might only be filled by inserting therein the articles named in subdivision (1) which, though susceptible of authorship, were not, in fact, of bona fide foreign authorship, and that no articles not susceptible of authorship should be classified under either subdivision (1) or (2).

Accepting the definition as thus given of an author, as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler," it is evident to the court that the exhibits before us are susceptible of authorship. It would be a work of supererogation for us now to attempt to describe each exhibit individually, and to point out wherein authorship is manifest. It is sufficient to say that the exhibits are full of descriptive historical and geographical matter, and such matter as required mental effort and ability to prepare. It is said that some of these exhibits, notably illustrative Exhibit No. 6, Hotels and Boarding Houses, is nothing but a compilation, and is not the work of an author. The testimony

shows, as to this particular exhibit, that the person preparing it was obliged to investigate throughout the Canadian Provinces, and to obtain, in any way he could, information as to the various hotels and boarding houses and camps, and was required to arrange the same so that the information might be accessible. In addition, many tabulated statements of other matters of information to the traveler are contained in this pamphlet, which includes 80 pages of closely printed informative material. We are aware of no definition of authorship which would exclude a work such as this. To do so would exclude many valuable scientific publications, works on mathematics, digests, travelers' guides, and similar works, which, although to a considerable degree compilations, are, nevertheless, works which require authorship.

We conclude that the court below did not err in its judgment, and said judgment is therefore *affirmed*.