(C. D. 1885)

ANDERSON ORGANIZATION *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided June 4, 1957)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Dorothy C. Bennett, Mollie Strum, Richard Welsh,* and *Murray Sklaroff,* trial attorneys), for the defendant.

Before JOHNSON and DONLON, Judges

DONLON, Judge: There is no controversy as to what this merchandise is. It is *beef and gravy,* packed in sealed cans. It was imported in 1952 from Mexico. This litigation has to do solely with the tariff classification and duty rate proper for merchandise of this description.

The collector liquidated the merchandise under paragraph 706 of the Tariff Act of 1930, as meat, prepared or preserved, not specially provided for, charged with duty at the rate specified in the trade agreement with Paraguay (T. D. 51649), effective April 9, 1947. In its protest, plaintiff agrees that classification of the merchandise under paragraph 706 is correct, but claims the benefit of a GATT rate reduction. The collector denies plaintiff's right to this rate reduction, contending that the merchandise is properly classified within the exception set forth in the GATT modification of paragraph 706, being beef, packed in airtight containers.

The question is, is "beef and gravy," packed in airtight containers, "beef," packed in airtight containers, under the GATT provision cited. If it is, plaintiff's protest must fail.

Plaintiff also argues, in its brief, for benefit of the Annecy protocol rate modification of paragraph 706 (T. D. 52373).

There are before us, therefore, contentions that are based on three different modifications (or alleged modifications) of paragraph 706. It will make the argument clearer to set them forth in the language of the several cited trade agreements.

Paraguay (T. D. 51649):

| United States Tariff Act of 1930; Paragraph | Description of article | Rate of duty |
|---|---|---|
| 706 | Meats, prepared or preserved, not specially provided for (except meat pastes other than liver pastes, packed in air-tight containers weighing with their contents not more than 3 ounces each). | 3¢ per lb., but not less than 20% *ad valorem.* |

General Agreement on Tariffs and Trade (T. D. 51802):

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 706 | Meats, prepared or preserved, not specially provided for (*except beef packed in air-tight containers* and pickled or cured beef or veal). | 3¢ per lb., but not less than 10% ad val. |

[Emphasis supplied.]

Annecy protocol (T. D. 52373):

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 706 | Meats, prepared or preserved, not specially provided for (except meat pastes, other than liver pastes, packed in air-tight containers weighing with their contents not more than 3 ounces each): | |
| | Beef packed in air-tight containers____ | 3¢ per lb., but not less than 15% ad val. |
| | Other_____ | 3¢ per lb., but not less than 10% ad val. |

We shall first dispose of plaintiff's claim under the Annecy protocol. The Annecy modification of paragraph 706, above quoted, was not effective in 1952, at the time when this merchandise was entered. When the President proclaimed Annecy rate modifications. effective January 1, 1950, he expressly excluded, in issuing his proclamation, the Annecy modification of paragraph 706 (T. D. 52373). It was not until December 16, 1953, that Annecy modification of paragraph 706 became effective by Presidential proclamation (T. D. 53413). Then it was not the modification that had been originally negotiated, benefit of which plaintiff claims in its brief. The Annecy modification of paragraph 706 that finally became effective on December 16, 1953, is different. However, neither the original nor the revised Annecy modification of paragraph 706 was effective in 1952, at the time when this merchandise was entered. Therefore, we do not speculate on what the effects of the Annecy modification might be. The issue now before us does not require this.

We proceed next to consider what is the proper application of the GATT modification of paragraph 706, on the facts that are before us.

There are proofs as to the method of producing this merchandise, as to how it is labeled, how it is sold, and how it is used.

Plaintiff's general manager, Mr. George Walker, was called as plaintiff's witness. He was in Camargo, Chihuahua, Mexico, from 1948 until 1953, as supervisor of the canning of beef and gravy at the Empacadora canning plant, where this merchandise was produced. He testified that he spent all of his time on the floor of the cannery; that he knew how the merchandise was prepared, and of what ingredients and in what proportions; and that he supervised the "packing" of the actual merchandise of these entries (R. 6, 7, 8).

He described the method of preparing the product, in substance, as follows:

Boned beef was taken into the cannery, run through a series of slicing machines to cut the beef into cubes of approximately an inch and a half, and the beef was weighed into batches of 500 pounds.

Gravy was prepared separately. The base of the gravy was a product known as Griffith Dry Gravy Mix. Actually, there were two mixes, "Griffith's Dry Gravy Mix #444 for Beef & Gravy" and "Griffith's Dry Gravy Mix GM–102." Both contained the same ingredients, but in different proportions. Formulae for their use in manufacturing beef and gravy were different, both as to recipe proportions of mix to be used and as to other ingredients. The formulae were adapted for use with batches of 500 pounds of meat. Both mixes were perfected for use in the manufacture of canned beef and gravy, according to Government specifications. (Plaintiff's exhibit 5.)

Mr. Walker testified that the dry gravy mix is combined with tomato puree and water in recipe proportions. This is thoroughly mixed and then added to the meat. The combination of beef and gravy is stirred until the gravy is thoroughly mixed with the meat and then is packed into cans. The cans are put through a sealing machine, which draws a vacuum on the cans, that is, vacuum packs and seals them. The cans are then placed in a retort, where the product is cooked for 75 minutes at 240 degrees. Thereafter, the cans are cooled, labeled, packed, and shipped (R. 11).

Mr. Walker stated the proportions of meat and gravy in various-sized cans of the product, as manufactured. In a 15½-ounce cán, 18 per centum of the contents would be gravy. In a 20¼-ounce can, there would be 15 per centum gravy (R. 12, 13).

The affidavit of Harry L. Gleason, vice president of The Griffith Laboratories, Inc. (plaintiff's exhibit 5), shows the components of the two dry gravy mixes, and their proportions, as follows:

| Dry Gravy Mix | #444 | GM–102 |
|---|---|---|
| Special Sterilized Wheat Flour | 66. 5% | 78. 2% |
| Salt | 31. 59% | 20. 3% |
| Caramel Color | . 95% | . 6% |
| Pepper | . 96% | . 9% |
| | 100% | 100% |

Mr. Walker testified that, in making beef and gravy to pack in 20¼-ounce cans, the proportions used for each 500 pounds of beef were 43.34 pounds of Griffith Dry Gravy Mix, 11.55 pounds of tomato puree, and 33.29 pounds of water, a total of 88.18 pounds of this mixture for combination with 500 pounds of meat. In making the product to pack in 15½-ounce cans, for each 500 pounds of beef, the proportions used were 50.93 pounds of Griffith Dry Gravy Mix, 13.56 pounds of tomato puree, and 39.13 pounds of water, a total of 103.62 pounds of this mixture for combination with 500 pounds of meat (R. 11, 12, 13).

Two cans of beef and gravy, taken from the entered merchandise, were put in evidence (R. 3) and, by court order, sent to the United States Customs Laboratory in New York for analysis (R. 83). The laboratory analysis, customs Form 6415, was received in evidence (defendant's collective exhibit B). This analysis reports the contents of each can, one taken from each of the protested entries, as follows:

Each sample consists of a can of small irregular cubes of cooked meat and a gravy as follows:

| Marks | Net Wgt. of Contents | % Meat | % Gravy |
|---|---|---|---|
| Entry 2114 | 15.5 ozs. | 93 | 7 |
| Entry 2670 | 21.7 ozs. | 77 | 23 |

The meat and gravy portions each contained salt, flour, tomato and pepper type spice as follows:

| | Entry 2114 | | Entry 2670 | |
|---|---|---|---|---|
| | Meat | Gravy | Meat | Gravy |
| % Salt | 1. 9 | 0. 8 | 1. 8 | 0. 7 |
| % Flour | 5. 2 | 1. 5 | 5. 7 | 4. 0 |
| *% Dry solids | 30. 3 | 14. 0 | 29. 2 | 17. 0 |

Tomato tissue identified microscopically and estimated to be very small in quantity. Pepper was detected by taste.

*Solids includes dry meat, salt, flour, tomato and spice as well as dried juice of the meat and small particles of meat and fat. The difference between solids and 100%=water.

Samples destroyed in analysis.

Labels and CF 6433 returned for each sample.

From the foregoing analysis, it appears that substantial amounts of flour, introduced into the gravy mix, have (presumably in the cooking process) impregnated the chunks of meat.

Two other cans, one from the entered merchandise and the other representative of it, were also received in evidence and marked plaintiff's collective exhibit 1. These cans, and their contents, are said to be alike in all respects, save only the size of the can, and, hence, quantity of the contents (R. 11, 12, 13). These cans are labeled as "listo Beef and Gravy, product of Mexico, ready to serve." There are label directions for use, as follows:

Pour into saucepan and heat slowly until boiling. Stir gently to prevent breaking the meat.

If additional gravy is desired, use 1 cup cold water thickened with 2 tablespoons flour, added to the hot Beef with Gravy. Serve with mashed or baked potatoes, boiled rice or noodles. Excellent over toast or biscuits. For meat pie, add cooked vegetables and top with biscuits or pastry.

There was also received in evidence (plaintiff's exhibit 2) a can labeled "Armour Pantry-Shelf Meals! Beef and Gravy, Product of Uruguay. Ingredients: Beef, Water, Cereal, Tomato Puree, Salt, Spice and Caramel Coloring," with suggestions for use printed on the label, as follows:

To HEAT: Place contents in sauce pan and cook over low heat for 10–12 minutes, stirring occasionally.

To SERVE: Serve with mashed potatoes and green vegetable or salad for main course or on bread or toast for hot meat sandwich. For Meat Pie: Combine with cooked potatoes, carrots and onions, top with baking powder biscuits and bake in 400° F. oven until biscuits are browned and stew is bubbling hot.

Mr. John J. Kelly, a salesman in the canned food department of Armour & Co., called as plaintiff's witness, testified that he sold merchandise like plaintiff's exhibit 2 as Star Beef and Gravy. He also sold Armour products that were beef without gravy (R. 63, 64).

As to sales of the instant merchandise, Mr. William O. Anderson, one of three partners of the Anderson Organization, plaintiff here, testified that he sold all of the imported merchandise of these entries. He sold it as "beef and gravy" (R. 45, 46).

It is not necessary to review, in this opinion, cumulative evidence to like effect, as to the Anderson sales and sales by other dealers in canned meat products. It is enough to note that there is clear evidence that this product was offered for sale, as its label shows, as "beef and gravy."

Testimony as to use of the instant merchandise was offered both by plaintiff and by defendant. Mr. Walker (R. 21); Mr. Holt, an importer of canned meats (R. 57); Mr. Parrott, sales manager for Tupman Thurlow Co., Inc., importer of canned meats (R. 75, 76); Mrs. Campbell, school lunch supervisor at Fort Smith, Ark. (R. 156, 157); and others testified that this product is used with rice and potatoes,

over toast or biscuits, to make meat pies, sometimes with additional gravy, all as the label directions suggest, and also that it is used with vegetables, to make hash, and for many other uses (R. 76).

These are the basic facts of record.

There appears to be an evolving expansion, in decisions of the appeals court, in the application of tariff provision for an article to many forms of the article, even in competition with special tariff provision for the particular form the article has taken. In some cases, this has required overruling earlier decisions, of more limited application. Since seldom is a new case on all fours with the earlier decided cases, it is the task of the trial court to analyze the principles that appear to have guided the appeals court in its decisions and to apply those principles to new situations as they arise in litigation.

In a fairly recent decision, *United States* v. *Schoenfeld & Sons, Inc.*, October term, 1956, 44 C. C. P. A. (Customs) 179, C. A. D. 657, the appeals court, expressly overruling (insofar as inconsistent) its prior decision in *Charles T. Wilson Co., Inc.* v. *United States*, 38 C. C. P. A. (Customs) 19, C. A. D. 433, held that *onion and garlic powder* should be classified as vegetables, reduced in size, on the ground that they are the flour or powdered form of vegetables, that is, onions and garlic, which, for tariff purposes, are vegetables, since they (i. e., onions and garlic) "are usually served at dinner in, with or after the soup, fish or meats which constitute the principal part of the repast * * *."

Earlier, but also in the October 1956 term, in *T. M. Duche & Sons, Inc., et al.* v. *United States*, 44 C. C. P. A. (Customs) 60, C. A. D. 638, the appeals court held that *canned cooked peel and pulp of oranges, minus seeds*, is to be classified *eo nomine* as oranges and not as fruit pulp.

In *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, it was held that *canned, cooked, minced clam meat in brine* is to be classified as clams in airtight containers, rather than as shellfish, prepared or preserved.

In *Crosse & Blackwell Co.* v. *United States*, 36 C. C. P. A. (Customs) 33, C. A. D. 393, it was held that *peeled, pitted, sliced, and pickled turpentine mangoes* were to be classified under the *eo nomine* provision for mangoes, rather than as fruit in brine, pickled, or otherwise prepared or preserved.

On the other hand, macerated bananas, to which sugar, honey, and a preservative had been added, were held classified as fruit pastes and fruit pulps, rather than as bananas, prepared or preserved, on the ground that *the product had become a new article, distinct in character and use from the article out of which it had been made. Inter-Americas Shipping Co.* v. *United States*, 40 C. C. P. A. (Customs) 100, C. A. D. 504.

Similarly, canned beef stew, containing "25% beef, 20% potatoes, 5% carrots, 5% peas, 5% onions, 2½% tomato puree, 5% celery,

flour, beef extract, flavoring, and spices, and 32½% water," was held a nonenumerated manufactured article, rather than a hash, or a form similar to hash, composed of vegetables and meat, not specially provided for, or as a soup preparation, composed of vegetables and meat, not specially provided for. *United States* v. *The Crosse & Blackwell Co.*, 42 C. C. P. A. (Customs) 99, C. A. D. 579.

Still earlier, in *United States* v. *Furuya Co.*, 6 Ct. Cust. Appls. 207, canned beef and mushrooms was held a nonenumerated manufactured article, rather than a meat, prepared or preserved, not specially provided for, on the ground that mushrooms had nothing to do with preservation of the meat and were not used simply to flavor the meat.

Is this merchandise, beef and gravy in airtight containers, a form of beef in airtight containers, as that designation appears *eo nomine* in the exception to the GATT modification of paragraph 706, *supra*?

The cited decisions of the appeals court seem to lay down as a guiding principle the rule that mere mechanical changes in an article of food, as by cutting, slicing, or grinding, or change by the application of heat, as by cooking, or by additives solely for the purpose of seasoning or preserving, constitute change merely in form of the product and that this does not result in change of tariff classification. On the other hand, when something is added, other than as a seasoning or preservative, as the sugar and honey that were mixed with bananas, or the vegetables with beef to make stew, or mushrooms with beef, the rule seems to be that the result is a new article, for tariff purposes, and that classification solely as a form of the chief component is lost. It is emphasized that this is particularly true when use of the new article is different from the use of the chief component.

Following this line of reasoning, we hold, on the record before us, that *beef and gravy* is not, for tariff purposes, mere beef, prepared or preserved. There is evidence that flour, or cereal, is a component. There is evidence that tomato puree is a component. There is evidence that the product is different from beef, prepared without gravy; that it is sold as a different article; and that (although both are used as food) the food uses are different. Proof that two articles both are used as food does not establish tariff identity where, as here, there is proof that the two food uses are different.

This merchandise is not beef, packed in airtight containers. It is another article, beef and gravy, packed in airtight containers. Plaintiff, therefore, has overcome the presumption of correctness that attaches to the liquidation. This merchandise does not fall within the GATT exception to paragraph 706.

It is, however, incumbent on plaintiff to establish also that the merchandise is dutiable as claimed in the protest. *United States* v. *Silk Association of America*, 16 Ct. Cust. Appls. 566. In our opinion, plaintiff has not done so. Plaintiff pleads only a claim to classification under paragraph 706, as beef, prepared or preserved, not specially

provided for. As already indicated, we hold that, on the record before us, this merchandise is not beef, prepared or preserved, for tariff purposes. It is beef and gravy, a product different from mere beef, prepared or preserved, a new article.

The same proofs that have successfully overcome the presumption of correctness attaching to the collector's liquidation serve also to negative plaintiff's protest claim. Plaintiff cannot have it both ways. In our opinion, this merchandise is beef and gravy, an article different for tariff purposes from mere beef in any form, and whether or not packed in airtight containers or otherwise prepared or preserved.

We do not express an opinion as to what the proper classification of this merchandise is. We hold that plaintiff's proofs do not establish the classification that was pleaded in its protest.

The protest is overruled. Judgment will be rendered accordingly.