(C.D. 2507)

GEIGY CHEMICAL CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 19, 1965)

*Eugene R. Pickrell* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: In the month of November 1959, plaintiff imported some 40,789 copies of a special supplement to a publication entitled "Canadian Psychiatric Association Journal." This merchandise was classified by the collector of customs at the port of entry, as books, not specially provided for, within the purview of paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and supplemented by Presidential proclamation, 92 Treas. Dec. 175, T.D. 54399, and, accordingly, was assessed with duty at the rate of 9 per centum ad valorem.

It is the claim of plaintiff that said merchandise is entitled to entry without the payment of duty, by virtue of the provision in paragraph 1629(a) of the Tariff Act of 1930, as amended by T.D. 51908, for "publications of individuals for gratuitous private circulation, not advertising matter."

The text of the provision invoked by the collector reads as follows:

Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, all the foregoing not specially provided for, if other than of bona fide foreign authorship (not including diaries, music in books, pamphlets, prayer books, sheets or printed pages of prayer books bound wholly or in part in leather, or tourist literature containing geographic, historical, hotel, timetable, travel, or similar information, chiefly with respect to places or travel facilities outside the continental United States).

This case has been submitted for decision upon a written stipulation of counsel for the respective parties hereto, wherein and whereby a copy of said special supplement was offered in evidence as plaintiff's exhibit 1, a commission duly executed by Dr. Frank Cyril Rhodes Chalke was received in evidence as plaintiff's exhibit 2, and the parties agreed that—

The product "Tofrānil" frequently mentioned in this Special Supplement is produced by J. R. Geigy, S.A., Basle, Switzerland and sold and distributed by Geigy Chemical Corporation, New York, New York.

The testimony of Dr. Chalke, taken pursuant to said commission, permits the following summary:

Dr. Chalke, a professor of psychiatry at the University of Ottawa, is also the editor of the Canadian Psychiatric Association Journal, a publication which is the property of the Canadian Psychiatric Association. As editor, he is responsible for both the editorial and business management, although, in the latter capacity, his responsibility is shared with a committee.

Sometime in 1958, representatives of the Geigy corporation conferred with Dr. Chalke in Montreal regarding a conference to be held at McGill University, in the spring of 1959, on the subject of Depression and Allied States, and requested that the Canadian Psychiatric Association Journal consider publication of a special supplement carrying the proceedings of this conference.

It was agreed that the expense of publishing this special issue would be borne entirely by the Geigy corporation; that the editorial staff would have final say regarding the context and format of the presentation; that the journal would be distributed to all regular subscribers; and that the Geigy corporation could run as many additional copies of the special supplement as it required, for whatever use it chose to make of them, provided they were not offered for sale.

At that time, the journal was issued regularly four times a year, and the special supplement, which was published pursuant to the agreement of the parties, was a complementary addition to these regular issues. It contained the entire proceedings of the conference on Depression and Allied States, including all papers and deliberations, edited partly by the editorial staff of the journal, with Professor Ewen Cameron, professor of psychiatry, at McGill University, as guest editor.

The supplement was printed by a firm in Montreal, because the regular printers of the journal were unabel to cope with the large press run required for this special edition.

To the best of the knowledge of the witness, the special supplement was never sold or offered for sale. It was circulated by the Canadian

Psychiatric Association to its regular subscribers to the journal, and by the Geigy corporation, gratuitously, to physicians all over the world.

With reference to the statements on the second page of plaintiff's exhibit 1, to the effect that the subscription for members is included in the annual Canadian Psychiatric Association membership fee, the subscription rate for nonmembers being $4 per annum, the witness stated that this statement is included in the regular masthead which appeared in all regular issues of the journal, and that gratuitous circulation among members was a condition for permitting the proceeding to be published as a special supplement to the journal.

Since the record shows that the special supplement here involved contains the full proceedings of the conference on Depression and Allied States, including all papers presented, and any discussions held thereon, counsel for plaintiff urges that the material is clearly educational, not advertising, despite the frequent references to plaintiff's product Tofrānil, and that, under the authority of the cases of *Schieffelin et al.* v. *United States*, 84 Fed. 880; *United States* v. *Badische & Co.*, 3 Ct. Cust. Appls. 528, T.D. 33170; and *United States* v. *Gips*, 4 Ct. Cust. Appls. 458, T.D. 33879, plaintiff's exhibit 1 was a publication gratuitously and privately circulated within the contemplation of paragraph 1629 (a), *supra*.

It is the primary contention of counsel for the Government that this special supplement was published and circulated for the purpose of advertising and exciting interest in plaintiff's product, Tofrānil, and to enhance the good will of the distributor. Under the circumstances, it is argued that the frequent references to Tofrānil in the exhibit constitute advertising. It is further urged that the terms of the agreement did not restrict plaintiff to private distribution of the supplement, and that, since Tofrānil is a prescription drug, physicians are the only group to which advertisement thereof can be directed, and, hence, that circulation amongst physicians is the equivalent of circulation to the general public itself. The cases of *United States* v. *Silk Association of America*, 16 Ct. Cust. Appls. 566, T.D. 43296, and *United States* v. *American Railway Express Co. et al.*, 17 CCPA 10, T.D. 43317, are cited in support of the argument that the supplement contains advertising matter.

The statutory provision under which free entry of certain publications is permitted requires that such publications shall be those of individuals for gratuitous private circulation, not advertising matter. The last-mentioned phrase was first inserted in a corresponding provision in the Tariff Act of 1913, after the cases cited and relied upon by plaintiff herein had been decided. So, of course, they can have no bearing upon that phase of the instant inquiry which is concerned

with the question of what constitutes advertising matter. Nevertheless, they are of interest here for their discussions of the remaining portions of this provision which has otherwise been reenacted without change since 1894.

In the case of *Schieffelin et al.* v. *United States, supra*, it was held that gratuitous circulation of a publication relating to Norway, its fisheries and customs, and to a name brand cod-liver oil, principally among physicians and others who might become interested in this cod-liver oil, was covered by the provision as it read in the Tariff Act of 1894. The court there stated:

> * * * The publisher doubtless expected by its distribution to promote the sale of his cod-liver oil, by enlightening those who might read it in regard to the valuable properties of that article.
>
> This circumstance, however, is not material. The books were imported for gratuitous private circulation, and if this was done in the effort to accomplish some ulterior object of interest to the publisher, the statute does not condemn it or make it in any sense a test of the dutiable character of the books.

The *Badische* case, *supra*, is relevant here for its conclusion that the word "individuals" in paragraph 517 of the Tariff Act of 1909, includes both corporations and partnerships, as well as single persons, and for its implied holding that circulation of a book about dyes to dyers, users of dyes, schools that make a specialty of preparing dyes, and to colleges and the like, constitutes private circulation.

The case of *United States* v. *Gips, supra*, remains an authority for its construction of the words "private circulation," as embracing a class "limited in interest and small in numbers when compared with the general public and the distribution of a printed work within such a class gives the work a private rather than a public circulation."

The first judicial consideration to be given to the provision in question as it now reads was in the case of *Van Doorn* v. *United States*, 12 Ct. Cust. Appls. 167, T.D. 40063, in connection with an importation of books, entitled "Holland America." The court there held that the fact that a work was circulated gratuitously to a private group did not necessarily negative the presence of advertising matter, and that, since the books in issue contained display advertisements of the Holland American Steamship Line to the extent of at least half the publication, they were excluded from free entry under paragraph 425 of the Tariff Act of 1913.

The case of *United States* v. *Silk Association of America, supra*, followed the rationale of *Van Doorn* v. *United States, supra*, for its conclusion that "[c]ertain catalogues or unbound publications, in a highly ornamented cover, entitled 'A Study of Conditions in Millinery,' and containing colored illustrations of millinery models or styles, including hats, wrist bags, parasols, and pocketbooks, accompanied by

descriptive reading matter," imported by the Silk Association of America for distribution to the manufacturing trades in this country to whom the association was selling silk, contained advertising matter; and both of these cases served as authorities for the holding in *United States* v. *American Railway Express Co., supra,* that material publicizing the railway, and resorts, places of interest, hotels, and the like, along its various routes, consisted of advertising matter, the court observing:

> No difference, in our judgment, can be found between that case [*United States* v. *Silk Association of America, supra*] and the one at bar. It is only reasonable to assume that the Canadian National Railways would not be distributing these pamphlets if it were not to increase interest in travel on their lines, or, as said in the *Van Doorn* case, *supra,* "To enhance the good will of the distributor."

Considering first the question of whether the imported publication contains advertising matter, we are of opinion that it is quite apparent that the material comprising the instant supplement is of a vastly different character from that which formed the subject of the importations in the *Van Doorn, Silk Association of America,* and *American Railway Express Co.* cases, *supra.* Although a substantial portion of the supplement is devoted to the nature and effects of the product Tofrānil merchandised by plaintiff, and to the extent that it is distributed by plaintiff to physicians who are potential users or dispensers of the product, it is calculated to "enhance the good will of the distributor," yet, it does not seem that the discussions *per se* constitute advertising matter. The papers and comments included in the present importation purport to be a verbatim transcript of the deliberations of a medical conference whose primary consideration, insofar as Tofrānil was concerned, was its effects from a purely medical and scientific standpoint on the basic theme of the conference—Depression and its Allied States. All of the papers were contributed by psychiatrists of established position who had met in Montreal, Canada, at the invitation of McGill University, "for the purpose of examining problems of psychiatric depression in the light of recent advances in therapy." (Plaintiff's exhibit 1.) That the product Tofrānil appears to have become an effective agent in the treatment of depressions and, hence, naturally the subject of extensive review and discussion cannot be construed as transforming purely scientific treatises on that substance into advertising material.

It must be remembered that, by agreement of the parties, although the Geigy corporation bore all of the expenses of the publication of the supplement, context and format were subject to the final approval of the editorial staff of the Canadian Psychiatric Association Journal. While it is fair to assume that plaintiff must have anticipated favorable comment about its product, it is equally fair to infer that there could

be no advance assurance to that effect, or that the ultimate contents of the supplement would prove beneficial to plaintiff.

Because of the necessarily impartial atmosphere surrounding the printing of this special supplement, and the circumstances under which the conference was held in the first instance, we do not consider that the report of its deliberations consisted of advertising material. That it was the manifest intent of the plaintiff to make use of its favorable comments on Tofrānil to promote the sale of that substance does not serve to convert it into advertising material within the context of paragraph 1629 (a), *supra*. That which is not *per se* advertising matter does not become advertising matter by reason of the fact that it is distributed solely for advertising purposes. It is the content, not the intent, which controls.

Turning now to the remaining conditions precedent to the free entry of publications within the scope of said paragraph 1629 (a), we think the record suffices as a *prima facie* showing of a gratuitous distribution to a limited group of people. By the terms of the agreement, plaintiff was expressly prohibited from offering the supplement for sale, and, to the knowledge of the sole witness, this commitment was never violated. It was his belief that the Geigy corporation distributed the supplement gratuitously to physicians all over the world.

It is an ingenious theory advanced by counsel for defendant that circulation amongst physicians was tantamount to public circulation for the reason that physicians are the general public with respect to a drug which only they can dispense, and they represent the only class of persons to whom advertisement of Tofrānil could be effectively directed. We do not agree, however, that the words "private circulation" are susceptible of so contrived an interpretation. Granted the existence of a special class of recipients to whom the printed matter is circulated, any reasons which may have dictated who shall comprise the class are obviously irrelevant. It is the fact of limitation to a particular group of persons, not the motivation for such limitation, which imparts the character of privacy to a given distribution, and there is no evidence of record here to controvert the testimony that this special supplement was privately circulated.

Under the circumstances, we are of opinion that plaintiff has made a *prime facie* showing that the subject publication falls within the scope of paragraph 1629 (a), *supra,* as publications of individuals for gratuitous private circulation, not advertising matter. The claim for free entry of the instant importations is, therefore, sustained.

Judgment will be entered accordingly.